## TABLE OF CONTENTS

Pertinent Facts………………………………………………………………………......3

Law and Argument……………………………………………………………….....5

    Baratta is Not a Medical Doctor …………………………………………………….6
    Baratta's Incomplete Accident Reconstruction …………………………………..8
    Baratta's Unscientific Biomechanical Conclusions ……………………………..11

Conclusion ……………………………………………………………………………13

## TABLE OF CASES

| Cases | Page |
|---|---|
| *Baxter v. Anderson*, No. 16-142-JWD-RLB, 2017 WL 8944175 (M.D. La. Oct. 4, 2017) | 7 |
| *Collett v. GEICO Cas.Co.*, 16-15908, 2017 WL 4553525 (E.D. La. 10/11/17) | 7 |
| *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) | 5 |
| *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) | 6 |
| *Laski v. Bellwood*, 215 F.3d 1326 (6 Cir. 5/25/00) | |
| *Oaks v. Westfield Ins. Co.,* 2014 WL 198161, (E.D. La. 1/16/14) | 7 |
| *Wright v. Selective Insurance, et al.,* No. 15-3544, 2016WL 11083337 (E.D. La. 10/4/16) | 7, 10 |

**Statutes**

| | |
|---|---|
| Federal Rule of Evidence article 702 | 5 |

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **JEFFREY KILLIAN and BRANDY BANES** | * CIVIL ACTION NO. 1:19-CV-01220 <br> * <br> * JUDGE DEE D. DRELL |
| **VERSUS** | * <br> * MAGISTRATE JUDGE JOSEPH H. <br> *    L. PEREZ-MONTES |
| **DEAN ANDERSON, CENTRA TECHNOLOGY INC, AND THE HANOVER INSURANCE COMPANY** | * <br> * <br> * |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE AND/OR DAUBERT CHALLENGE OF RICHARD BARATTA, PH.D, P.E.

MAY IT PLEASE THE COURT:

Plaintiffs adamantly oppose the introduction of testimony and/or documentary evidence generated by Richard Baratta, Ph.D, P.E. at the jury trial in this matter. The Report of Findings ("report") generated by Mr. Baratta in conjunction with his deposition testimony of January 12, 2021 reveal that his opinions as well as his basis for same are severely unreliable. As such, any testimony or evidence of Mr. Baratta will completely confuse the jury to the detriment of the plaintiffs.

**PERTINENT FACTS**

On June 10, 2019, plaintiff, Jeffery Killian was operating a 2003 Ford truck and pulling a utility trailer on the US Hwy 167 southbound off-ramp. While attempting to make a left turn onto US Hwy 165 northbound, a 2003 Chevrolet K2500, driven by defendant, Dean Anderson, and traveling straight, failed to stop at the red light on US Hwy 165 Southbound and collided with the passenger side of the Killian utility trailer.

As a result of the subject automobile accident, Mr. Killian and his passenger/co-plaintiff, Brady Banes sustained severe personal injuries necessitating surgery.

During the course of litigation, the defendants hired alleged biomechanical engineer expert, Richard Baratta, Ph.D, P.E. Per Mr. Baratta's report, he was retained by defendant's to "reconstruct the dynamics of the accident and to determine the motions and mechanisms that the Ford's occupants [plaintiffs] would have sustained, in relation to the injuries they have claimed."[1] Mr. Baratta concluded the following from his analysis:

1. The engagement occurred between the Chevrolet and the Ford's trailer, and there was no direct contact between the Chrevrolet and the Ford. The Ford was coupled to the trailer via hitch connection. This type of connection has limited ability to transmit dynamic motions to the Ford, as it would tend to yaw about the hitch and transmit forces primarily in the longitudinal direction. Thus, the motions of the ford have been significantly dampened in relation to the trailer or the Chevrolet.
2. The body of the Ford experienced at most an overall acceleration on the order of 2g (where 1 g is the acceleration due to Earth gravity) with the body acceleration of occupants would be less than 2 g. These accelerations would be vibrational in nature, and would have a character similar to a sideswipe, but with a shorter time duration.
3. Occupants of the Ford would have experienced minor motions within the vehicle. As Chevrolet contacted the left side of the Ford's trailer, its occupants' initial movement would have been toward the left, followed by a rightward return them to their neutral seater position prior to the impact. The accelerations would be well within levels experienced during routine activities of daily living.
4. The loads that the spinal tissues of the occupant of the Ford would have undergone would be well within what would have been experienced during routine activities of daily living. Spinal strains and sprains would not be consistent with the dynamics of this accident.
5. There were no mechanisms in the accident that could account for structural injuries to the occupants' spine or structural aggravation to any pre-existing degenerative changes to the spine. Therefore, disc herniation or bulging would not be consistent with resulting from the mechanics of this accident.
6. There is no mechanism in the dynamic of the subject accident that accounts for rotator cuff injury, tendinosis, or aggravation to pre-existing shoulder impingement.[2]

---

[1] Exhibit A, page 1.
[2] Id, pages 2-3.

Mr. Baratta's conclusions are simply not based on his work product and not based on any scientific analysis, therefore, is useless. Plaintiffs assert that it is clear that Mr. Baratta performed a partial analysis to arrive at the paid-for conclusions of the defendants.

**LAW AND ARGUMENT**

**DAUBERT STANDARD**

Federal Rule of Evidence article 702 provides the following, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education *may* testify in the form of an opinion or otherwise if:

- **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
- **(b)** the testimony is based on sufficient facts or data;
- **(c)** the testimony is the product of reliable principles and methods; **and**
- **(d)** the expert has reliably applied the principles and methods to the facts of the case (emphasis added).

The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), established that expert testimony must be *reliable* and *relevant*. Scientific testimony is reliable only if "the reasoning or methodology underlying the testimony is scientifically valid," meaning that such testimony is based on recognized methodology and supported by appropriate validation based on what is known. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The Court set forth a list of factors to consider in determining the scientific reliability of expert testimony. These factors are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; (4)

whether standards and controls exist and have been maintained with respect to the technique; and (5) the general acceptance of the methodology in the scientific community. *Id.*

Whether some or all these factors apply in a particular case depends on the facts, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

In the instant matter, plaintiffs assert that Mr. Baratta's conclusions as listed in his report are not supported by appropriate validation of what is or could be known. As such, he does not meet the Daubert standards of *reliability* and *relevancy*.

**Baratta Should Be Prohibited from testifying on the issue of Medical Causation**

Admittedly, Mr. Baratta is not a medical doctor. He further admitted that he will defer to the plaintiff's treating physicians on the issue of causation.

> Q: Or are you trying to give a medical causation opinion, that's my question, I guess.
> A: okay, so let—number one, not a medical opinion in any way, shape, or form. Number two, the role of biomechanics is not to say whether something could or could not. When we talk about could or could not, that puts us in the realm of possibility. What we're looking at is consistency, not causation. Whether the mechanics of the accident are consistent with the mechanics that are associated with specific damages to tissue, again, that then get translated as diagnosis by physicians.[3]

This explanation provided by Mr. Baratta could not be a better example of his confusing and irrelevant status in relation to the case at bar. Unbeknownst to Mr. Baratta, the trier of fact's role is to determine the "coulds" or "could nots" and/or the extent of "probability."

> Q: Okay, so the ultimate person in this case to tell us whether or not they feel that they were hurt and required whatever medical treatment, would be the medical physicians that treated them, correct?
> A: Yes, sir. I would not be—I would not be arguing with physicians.[4]

---

[3] Exhibit B, pages 44-45.
[4] Id, pages 46-47.

Despite Mr. Baratta's deferment to treating physicians on the issue of causation, his report suggests otherwise. Specifically, conclusions 3-6 definitively state that the subject accident did not cause the specific injuries sustained by the plaintiffs. Mr. Baratta is not qualified to render an opinion of medical causation specific to plaintiffs, Jeffrey Killan and Brandy Barnes. Federal jurisprudence has established that an expert such as Mr. Baratta is not qualified to deduce whether the forces of an accident are sufficient to cause specific injuries to plaintiffs. *Laski v. Bellwood*, 215 F.3d 1326 (6 Cir. 5/25/00); *Collett v. GEICO Cas.Co.*, 16-15908, 2017 WL 4553525 (E.D. La. 10/1117); *Baxter v. Anderson*, No. 16-142-JWD-RLB, 2017 WL 8944175 (M.D. La. Oct. 4, 2017); and *Oaks v. Westfield Ins. Co.,* 2014 WL 198161, (E.D. La. 1/16/14).

Lastly, in *Wright v. Selective Insurance, et al.,* No. 15-3544, 2016WL 11083337 (E.D. La. 10/4/16), the Court prohibited Mr. Baratta from offering expert testimony about medical causation stating, "Dr. Baratta is not a medical doctor nor is he qualified as a medical expert."

As such, the Court in *Wright* excluded from evidence Mr. Baratta's fifth conclusion as found in his report in that matter which stated, "Mechanical damage to intervertebral discs would not be consistent with the dynamics of this accident, as the mechanisms associated with causing acute disruptions of intervertebral discs would not have been invoked."[5] A cursory review of Mr. Baratta's fifth conclusion in *Wright*, is similar to his conclusions 3-6 in the instant matter.

Plaintiffs respectfully urge this Honorable Court to prohibit Mr. Baratta from offering any testimony and/or evidence regarding causation of the plaintiffs' injuries and exclude conclusions 3-6 of his report.

---

[5] Exhibit D, page 2.

7

**Baratta Should be Prohibited from testifying regarding any Accident Reconstruction for the subject automobile accident**

Plaintiffs assert that Mr. Baratta should be prohibited from testifying and/or rendering any opinion as to fault, comparative or otherwise, before the jury regarding the subject automobile accident. Additionally, because Mr. Baratta did not conduct a proper reconstruction of the subject accident, plaintiffs assert that Mr. Baratta and/or defendants should be prohibited from introducing into evidence at the trial of this matter, Baratta's conclusions 1-3 per his report.[6]

Pertinent to the analysis of "reliability" of Mr. Baratta's opinions, is a careful consideration of the accident-specific investigation performed by Baratta. In his report, he provided the following:

> (Within the context of this analysis, an accident cause analysis and at-fault determination were not conducted.) Further, *the accident reconstruction was limited* to the point in time immediately before to immediately after the vehicle-to-vehicle contact in order to determine the forces and motions of the vehicle to support the subsequent biomechanical analysis [emphasis added].

In other words, the defendant's paid-for, "accident reconstructionist" has no opinion as to liability and, even more bizarre, Baratta's reconstruction investigation of the accident was limited to only two moments hand-picked from the entirety of the sequence of events that equal the total automobile accident scenario, i.e. 1) "the point in time immediately before, and 2) "immediately after the vehicle-to-vehicle contact."

Plaintiffs assert that Mr. Baratta's reconstruction of the automobile accident is severely flawed because there was no investigation and/or research done in regard to the movement, speed, roadway surface, or force of the subject vehicles in between the two moments Baratta chose to analyze. More importantly, Mr. Baratta admits a complete accident reconstruction was NOT done.

> Q:   So what we know from talking already, I'm just going to surmise this, there was no complete accident reconstruction done, correct?

---

[6] Exhibit A, page 2.

| | |
|---|---|
| A: | Correct. |
| Q: | We don't know the weight of the trailer or the stuff on the trailer, the ATV or the lawnmower. |
| A: | Correct. Simulations were done – that was addressed by doing a range from minimum to maximum. |
| Q: | You didn't inspect either truck. |
| A: | Correct. |
| Q: | You didn't inspect either truck for damage or damage was not repaired. |
| A: | Correct. |
| Q: | You did not download any of the data from any vehicle. |
| A: | Correct. |
| Q: | You have no skid data. |
| A: | Correct. |
| Q: | You did not measure the scene of the accident. |
| A: | Correct. |
| Q: | And you did not go to the scene of the accident. |
| A: | Well, again, once the vehicles are gone, the scene becomes a site, so we did not go to the site of the accident. |
| Q: | You did not go to the site of the accident. |
| A: | Correct. |
| Q: | You did not test what it would take to deform the metal on the trailer itself. |
| A: | correct. |
| Q: | You did not test what it would take the break [as typed] the axle on the trailer. |
| A: | Correct. |
| Q: | You did not test what force it would take to break the bolts on the leaf springs of the truck. |
| A: | Correct. |
| Q: | And you did not test what forces it would take to bend the receiver hitch. |
| A: | Correct. Again, I did not test specifically to this case. Let's clarify that.[7] |

Additionally, page 18 of Mr. Baratta's report entitled, "Basis of Report" list the accident-specific items/material that he reviewed and considered to formalize his opinions in this matter. The list simply includes the accident report, photographs, a repair estimate for plaintiff's trailer only, medical records, statistical data, and plaintiff's deposition. The trailer involved in the subject accident was inspected by a different employee of Mr. Baratta's organization.[8]

---

[7] Exhibit B, pages 76-78.
[8] Exhibit A, page 18.

Again, *Wright, et al v. Selective Insurance, et al* 2016 WL 11088312 (E.D. La. 10/4/16) is directly on-point and supports plaintiffs, Killian and Banes, assertions. The Court in *Wright* concluded the following:

> While this Court finds that conclusions one through four are within Dr. Baratta's expertise as a biomechanical engineer and accident reconstructionist, because Dr. Baratta *used limited information and data when analyzing the accident*, the Court finds that Dr. Baratta's testimony should be limited to conclusion one. <u>Dr. Baratta apparently relied on photographs and other recorded data to make his findings; he did not interview witnesses or plaintiffs, visit the scene of the accident, take into account road surface or condition; or reconstruct the accident in any way whether digitally or physically.</u> Because of his limited data, conclusions two, three and four are outside the scope of his research and reconstruction (Emphasis added).[9]

Baratta committed the same flawed investigation in the instant matter. There are too many "holes" in Baratta's research and investigation for it to provide a reliable and complete picture for the trier of fact.

Further proving plaintiffs' assertions are the documents produced via the subpoena duces tecum propounded onto Mr. Baratta by plaintiffs.[10] Of the documents produced in response to plaintiff's subpoena, was a June 8, 2020 engagement letter from Rimkus Consulting Group, Inc. ("Rimkus") to defense counsel, the Terms and Conditions of employment of Rimkus, as well as a the itemized invoice of Rimkus.[11] A cursory review of these documents reveal that Mr. Baratta and Rimkus Consulting Group, Inc. manufacture nothing more than generic, assembly-line type reports suitable enough to get paid. In the instant matter, it appears from the itemized bill that Rimkus was paid approximately $20,000 for 47.5 hours of work.

---

[9] Exhibit C and D.
[10] Exhibit E.
[11] Exhibit F, in globo.

Even more disgraceful is Mr. Baratta's testimony (under oath) stating the he personally read the deposition transcripts and medical records of the plaintiffs when, in fact, pursuant to the itemized bill, it was an individual by the name of Marzieh Ardestani that did so.[12]

The bill produced by Rimkus further proves Baratta's report as unreliable because it reveals that several individuals performed work to generate the subject report. No information has been produced regarding those individual's education, training, skill, expertise, or knowledge.

As in *Wright*, Mr. Baratta should be prohibited from testifying and/or introducing into evidence the conclusions listed in his report, namely:

1. The engagement occurred between the Chevrolet and the Ford's trailer, and there was no direct contact between the Chrevrolet and the Ford. The Ford was coupled to the trailer via hitch connection. This type of connection has limited ability to transmit dynamic motions to the Ford, as it would tend to yaw about the hitch and transmit forces primarily in the longitudinal direction. Thus, the motions of the ford have been significantly dampened in relation to the trailer or the Chevrolet.
2. The body of the Ford experienced at most an overall acceleration on the order of 2g (where 1 g is the acceleration due to Earth gravity) with the body acceleration of occupants would be less than 2 g. These accelerations would be vibrational in nature, and would have a character similar to a sideswipe, but with a shorter time duration.
3. Occupants of the Ford would have experienced minor motions within the vehicle. As Chevrolet contacted the left side of the Ford's trailer, its occupants' initial movement would have been toward the left, followed by a rightward return them to their neutral seater position prior to the impact. The accelerations would be well within levels experienced during routine activities of daily living.

**Baratta Should be Prohibited from testifying as the biomechanical, kinematic and/or forces of impact upon the plaintiff's anatomy**

It is impossible for Mr. Baratta (and the other individuals from Rimkus) to formulate reliable opinions/conclusions as to biomechanics without knowing the actual weight, speed, and movement of the vehicles involved in the subject automobile accident. In other words, an

---

[12] Id.

incomplete reconstruction of the automobile accident can only lead to an unreliable biomechanical analysis.

Mr. Baratta's report completely disregards plaintiff Killian's testimony that his vehicle was pushed sideways approximately fifteen (15) feet upon impact. As such, Mr. Baratta does not account for lateral forces experienced by plaintiff's upon impact. It is without question that a finding of lateral forces upon plaintiffs' bodies would change the biomechanical conclusions within Mr. Baratta's report.

> Q: Okay, so let's assume if he was pushed sideways from this accident, okay, would that be significant force to cause a mechanism of injury for this person in the Ford truck?
> A: There are some injuries who's – that have mechanisms that would be associated with a meaningful lateral component. If there was a meaningful lateral component to the accident, there certainly are some injuries that could be consistent with that.
> Q: Okay. So if he was pushed sideways 15 feet, as he testified to, there is a meaningful component of force here to cause an injury?
> A: Some specific injuries.[13]

Furthermore, in response to the subpoena duces tecum propounded by plaintiff (Exhibit E), emails from defense counsel to Rimkus staff attached a total of five (5) photographs of the defendant's vehicle, plaintiff's trailer, a description of the accident as well as a diagram of how the accident occurred.[14] Interestingly, the diagram provided to Mr. Baratta by defense counsel depicts the subject automobile accident as a "t-bone" type accident. However, Mr. Baratta consistently has referred to it as a "sideswipe." This analysis of a sideswipe by Baratta is the only possible way to justify any of his conclusions, however it is not consistent wit the actual facts pertaining to the subject accident.

---

[13] Exhibit B, page 43
[14] Exhibit G, in globo.

Additionally, while it is undisputed that the vehicles involved in the subject accident were a 2003 Chrevrolet K2500, 2003 Ford truck and a 1997 utility trailer. Per the materials produced in response to plaintiff's subpoena, are various NHTSA crash reports used by Mr. Baratta and Rimkus personnel in this matter to arrive at their conclusions.[15] Despite the diagram from defense counsel categorizing this accident as a "t-bone" collision, each of the NHTSA reports considered by Baratta and crew regard a sideswipe collision. Additionally, the vehicle statistics reviewed are completely opposite from the vehicles involved in the subject accident.[16]

As in *Wright*, plaintiffs assert that the flawed reconstruction and lack of accident-specific facts clearly makes Baratta's biomechanical opinions unreliable and thus, irrelevant. Plaintiffs request this Honorable Court prohibit and/or preclude the defendants from introducing testimony and evidence of Rimkus personnel and Mr. Baratta regarding the biomechanical aspects of the subject expert report and specifically conclusions 3-6 of his Report.

**CONCLUSION**

Jurisprudence is well established that evidence, though relevant, is inadmissible if found to be confusing, prejudicial, a waste of time, misleading, cumulative or present a delay. Plaintiff's adamantly assert that Mr. Barratta's report and testimony is all those things. There is absolutely nothing scientific about Mr. Baratta's methods or reasoning. As already decided in *Wright*, introduction of his opinions and basis for same will not assist the trier of fact in any manner.

As such, plaintiffs request that defendants be prohibited from introducing testimony and/or evidence generated by their accident reconstruction and biomechanical engineering expert, Richard Baratta, Ph.D, P.E.

---

[15] Exhibit H.
[16] Id.

*Respectfully Submitted:*

*BRIAN CAUBARREAUX & ASSOCIATES*

BY:  s// Emily Gremillion
BRIAN M. CAUBARREAUX, #21522
EMILY GREMILLION, #31177
EUGENE A. LEDET, JR, #19681
ETHAN E. CAUBARREAUX, #38694
PATRICK B. SADLER, #32235
DAVID A. JOHNSON, #21650
2204 MacArthur Drive
Alexandria, Louisiana 71301
Telephone: (318) 442-0900
Facsimile: (318) 445-0940
*Attorneys for Plaintiff*

## CERTIFICATE

I hereby certify that a copy of the foregoing pleading has been sent to all counsel of record via CM/ECF filing system this 27[h] day of January, 2021.

 s//Emily Gremillion
**Emily Gremillion**